CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 04 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JARED B. WILBURN, | ) |
| Plaintiff, | ) Civil Action No. 7:14-CV-00255 |
| v. | ) **MEMORANDUM OPINION** |
| CITY OF ROANOKE, | ) By: Hon. Glen E. Conrad |
| Defendant. | ) Chief United States District Judge |

Plaintiff Jared Wilburn, a former Roanoke City police officer, filed this action against Defendant City of Roanoke ("the City"), alleging that the City terminated his employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. The case is presently before the court on the City's motion for summary judgment. For the following reasons, the court will deny that motion.

**Factual and Procedural History**

The following facts are either undisputed, or, where disputed, are presented in the light most favorable to Wilburn. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Wilburn began working for the City as a police officer in October 1996. See Compl. ¶ 7. Wilburn worked as a "Patrol Officer II," patrolling the streets of Roanoke on a bicycle. Deposition of Jared Wilburn ("Wilburn Dep.") at 24-25, Pl.'s Br. in Opp. Ex. 1, Docket No. 33. In December 2010, Wilburn injured his left wrist and hand while effectuating an arrest. Id. at 20. He was diagnosed with chronic regional pain syndrome as a result. Id. at 22.

Wilburn had three surgeries to implant a device in his body that sends electrical pulses to his spinal column, which relieves the pain in his wrist and hand. Id. at 25. During the first surgery in July 2012, the device's battery was placed in Wilburn's buttocks; however, the

battery moved out of place shortly thereafter. Id. at 26-28. Wilburn had a second surgery, also in July 2012, which again placed the battery in his buttocks. Id. The battery dislodged a second time. Wilburn had a third surgery in September 2012, at which time the battery was relocated to his chest. Id. at 25; see also Declaration of Jared Wilburn ("Wilburn Decl.") ¶ 8, Br. in Opp. Ex. 2. This third surgery was successful and the battery has not moved since that time. Wilburn Decl. ¶ 9.

After his third surgery, Wilburn returned to work for the police department in a "light-duty" capacity. Wilburn Dep. at 28-29. He first worked in the health services department, taking phone calls and reports. Id. at 29. He then worked in the property room, where he received and logged evidence. Id. at 30. Wilburn also worked at the police academy, assisting with training and working on concealed weapons permits. Id. at 29.

In January 2013, Wilburn underwent a functional capacity examination, which concluded that he met the strength grade for a police officer. Id. at 39-40; see Br. in Opp. Ex. 5. Wilburn also passed firearms and baton recertification tests. Br. in Opp. Ex. 4. In February 2013, after determining that Wilburn's injuries had reached "maximum medical improvement," Dr. Murray Joiner released Wilburn for duty with certain "permanent restrictions." Id. Ex. 6. Dr. Joiner stated that he "had reservations" about Wilburn being placed in "combative situations." Id. Ex. 8. According to Wilburn, Dr. Joiner did not have concerns with Wilburn being a police officer generally; instead, he was worried about Wilburn being a patrol officer, which requires a greater degree of physicality than other law enforcement positions. Wilburn Dep. at 35-36; see Deposition of Murray Joiner ("Joiner Dep") at 7-11, Mot. Summ. J. Ex. D, Docket No. 27. Dr. Joiner "deferred to [Human Resources]" with

2

respect to whether the City had a position available that could accommodate Wilburn's restrictions. Br. in Opp. Ex. 6.

Wilburn asked the City to accommodate his disability by laterally transferring him to another vacant law enforcement position. Specifically, Wilburn requested transfer to a vacant detective position or evidence technician position. Wilburn Dep. at 36. According to Wilburn, either of these positions would have accommodated his disability, because neither requires the same level of physicality as a patrol officer. Id. at 37, 43. Police Chief Christopher Perkins decided, however, that Wilburn's permanent restrictions "prevented him from performing as a police officer" in any capacity. Deposition of Christopher Perkins ("Perkins Dep.") at 9, Mot. Summ. J. Ex. E. Carolyn Glover, the City's then-Director of Human Resources, "search[ed] the available positions" in the City's database and likewise determined that "there were no positions available in which Mr. Wilburn could perform the essential functions of the job, with or without reasonable accommodation." Declaration of Carolyn Glover ("Glover Decl.") ¶¶ 11-12. Thus, instead of offering Wilburn a lateral transfer within the police department, or offering to transfer him to a lower-paid position or a position outside the police department, the City terminated Wilburn's employment on March 4, 2013. Wilburn Dep. at 18.

After exhausting his administrative remedies, Wilburn filed this action on May 16, 2014, alleging that the City failed to accommodate his disability in violation of the ADA. The City has moved for summary judgment. See Docket No. 26. The motion has been fully briefed, and the court heard argument on June 12, 2015. At the close of that hearing, the court permitted the parties to submit supplemental briefing with respect to the interactive process

3

required by the ADA. The parties have submitted those briefs,[1] and the motion is now ripe for review.

## Standard of Review

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor. Id. at 255; see also Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). The court cannot "weigh[] the evidence or assess[] the witnesses' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248.

## Discussion

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability..." 42 U.S.C. § 12112(a). Disability discrimination may include the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an [] employee..." Id. § 12112(b)(5)(A). A "qualified individual" is one "who, with or without reasonable accommodation, can perform

---

[1] The City submitted several affidavits with its supplemental brief. See Docket No. 39. Wilburn has moved to strike these affidavits, arguing that they "improperly introduce new evidence" in a supplemental brief, "depriv[ing] [him] of any opportunity to conduct discovery or respond with respect to the new evidence." Docket No. 41. The court concludes that material facts are in dispute with respect to whether Wilburn is a "qualified individual," so it does not reach the issue of whether the City satisfied the requirements of the interactive process in this decision. Because the court need not consider the new evidence proffered by the City, Wilburn's motion to strike will be denied as moot.

4

the essential functions of the employment position that such individual holds..." Id. § 12111(8).
Thus, in a failure-to-accommodate case, a plaintiff must show

> (1) that he was an individual who has a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position...; and (4) that the [employer] refused to make such accommodations.

Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (quoting Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001)). "Reasonable accommodation" may include "reassignment to a vacant position." See 42 U.S.C. § 12111(9). In this case, the City does not dispute that Wilburn has a disability,[2] that it had notice of his disability, or that it failed to provide him with his requested accommodation – reassignment to a vacant position. The City asserts, however, that its failure to do so did not violate the ADA, because Wilburn could not perform the essential functions of any law enforcement position with or without reasonable accommodation. Upon review of the record, the court concludes that genuine issues of material fact preclude summary judgment on this claim.

The "essential functions" of a position are those "fundamental job duties of the employment position the individual with a disability desires." 29 C.F.R. § 1630.2(n)(1). This "does not include the marginal functions of the position." Id. A job function may be considered essential if the position exists to perform that function, there are a limited number of employees who can perform that function, or the function is so specialized that the employee was hired specifically to perform it. See 29 C.F.R. § 1630(n)(2). Evidence of whether a function is essential includes

> (i) the employer's judgment as to which functions are essential; (ii) written job

---

[2] Although the parties agree that Wilburn was disabled under the ADA, they dispute the extent of his disability. According to Wilburn, he simply needed to limit how often he engaged in physical, combative situations. See Wilburn Dep. at 35-36. The City asserts, however, that Wilburn's permanent restrictions meant that he could never engage in such activities. See Perkins Decl. ¶ 10.

5

Case 7:14-cv-00255-GEC   Document 56   Filed 08/04/15   Page 5 of 8   Pageid#: 536

descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent performing the function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the terms of a collective bargaining agreement; (vi) the work experience of past incumbents in the job; and/or (vii) the current work experience of incumbents in similar jobs.

Id. § 1630(n)(3). The plaintiff bears the burden of proving that he could perform the essential functions of his position or the position to which he sought reassignment. See Petty v. Freightliner Corp., 123 F.Supp.2d 979, 984 (W.D.N.C. 2000).

According to the City, all sworn law enforcement officers, including evidence technicians,[3] must be able to "perform essential law enforcement activities such as enforcement of the law, arresting criminal suspects, and responding to the aid of citizens and fellow law enforcement officers." Perkins Decl. ¶ 15. The written job description for the evidence technician position likewise lists "mak[ing] arrests" and "perform[ing] patrol duties when necessary" as job responsibilities. Mot. Summ. J. Ex. I at 2. Thus, in the City's view, Wilburn was not qualified to work as an evidence technician, as he could not perform all of its "essential functions" of that position.

An employer's judgment with respect to whether a particular job function is essential is not conclusive, however. See Rorrer v. City of Stow, 743 F.3d 1025, 1039 (6th Cir. 2014) ("At the summary judgment stage, the employer's judgment will not be dispositive on whether a function is essential when evidence on the issue is mixed."). Indeed,

> [i]f an employer's judgment about what qualifies as an essential task were conclusive, an employer that did not wish to be inconvenienced by making a reasonable accommodation could, simply by asserting that the function is essential, avoid the clear congressional mandate that employers make reasonable accommodations.

Id. (internal citations and quotation marks omitted). Here, Wilburn has produced evidence

---

[3] Because the court finds that a genuine factual dispute exists with respect to whether Wilburn could perform the essential functions of the evidence technician position, it does not consider whether the same is true with respect to the detective position or other vacant positions within the City.

tending to show that evidence technicians rarely use force or effectuate arrests, suggesting that those job functions are only "marginal" to that position. See Pl.'s Br. in Opp. Ex. 20-21. A reasonable juror might find that the City could have reasonably accommodated Wilburn's disability by reassigning him to the evidence technician position and reallocating those marginal functions to other officers as needed. See, e.g., E.E.O.C. v. Womble Carlyle Sandridge & Rice, LLP, 2015 WL 3916760, at *5 (4th Cir. June 26, 2015) (noting that "reallocating or redistributing nonessential, marginal job functions is a potential reasonable accommodation").

The City has not cited the decisions in which other district courts in this circuit have found that the ability to make a forcible arrest is an essential function of all law enforcement positions. See Allen v. Hamm, No. 05-879, 2006 WL 436054 (D. Md. Feb. 22, 2006), aff'd 226 F. App'x 264 (4th Cir. 2007) (unpublished); Champ v. Baltimore County, 884 F.Supp. 991 (D. Md. 1995). The court believes these cases are distinguishable in any event. In both Champ and Hamm, it was undisputed that the plaintiffs were totally incapable of making an arrest or performing other physical job functions due to their disabilities. See Hamm, 2006 WL 436054, at *3-4; Champ, 884 F. Supp. at 995-96. Here, on the other hand, Wilburn has produced evidence showing that he satisfied the physical qualifications necessary to be a law enforcement officer and could perform physical tasks on occasion. See Wilburn Dep. at 35-36; 39-40; Pl.'s Br. in Opp. Ex. 4 (firearm and baton recertification results). Moreover, the defendants in both cases had written policies requiring all officers to make forcible arrests or otherwise limiting light-duty assignments. See Hamm, 2006 WL 436054, at *1; Champ, 884 F. Supp. at 994. The City has pointed to no such written policy here, and Wilburn has produced evidence suggesting that at least one other City police officer was assigned to a position not requiring him to effectuate

7

arrests or perform other physical functions in order to accommodate his disability.[4] See Perkins Dep. at 15-16, 32 (paralyzed officer returned to work as a certified police officer in part-time crime prevention role); see Leslie v. St. Vincent New Hope, Inc., 916 F. Supp. 879, 888 (S.D. Ind. 1996) (noting that reassignment of other disabled employees may suggest that a similar reassignment would have been a reasonable accommodation for the plaintiff).

The City also argues that Wilburn was not "otherwise qualified" for the evidence technician position because he did not have the necessary training. See Perkins Decl. ¶ 22; see Southeastern Comm. Coll. v. Davis, 442 U.S. 397, 406 (1979) (stating that an individual is only "otherwise qualified" for a position if he is "able to meet all of a program's requirements in spite of his handicap"). Wilburn testified, however, that the evidence technician position advertised at the time that he sought accommodation did not require any particular training or certification. See Wilburn Dep. at 43. Moreover, the court cannot conclude on the basis of the current record that Wilburn could not have obtained the requisite training in the time that lapsed between when he requested accommodation and when the evidence technician position was filled.

## Conclusion

For these reasons, the court will deny the City's motion. As indicated in the court's pre-trial order, issues of liability and damages will be bifurcated at trial. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This  4th  day of August, 2015.

*[signature]*

Chief United States District Judge

---

[4] For the same reason, the court cannot conclude that reassigning Wilburn would have necessarily endangered the City's other police officers or the public or would have otherwise created an undue hardship on the City as a matter of law.