CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 27 2015

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JARED B. WILBURN, | ) | |
| | ) | Civil Action No. 7:14-CV-00255 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CITY OF ROANOKE, | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

Plaintiff Jared B. Wilburn brought this action against defendant the City of Roanoke ("the City"), his former employer. At the close of plaintiff's evidence at trial, defendant moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. For the reasons stated in open court and for those set forth below, the court concludes, as a matter of law, that a reasonable jury could not find in favor of plaintiff.

### Factual and Procedural History

The following facts are undisputed, or, where disputed, are presented in the light most favorable to Wilburn.

Wilburn began working for the City as a police officer in October 1996. Wilburn worked as a patrol officer, which involved patrolling the streets of Roanoke on a bicycle. In December 2010, Wilburn injured his left wrist and hand while effectuating an arrest against an intoxicated individual.

After his injury, Wilburn returned to work at the City's police department in a "light duty" capacity. First, he worked in the teleservices department, taking phone calls and writing reports. Next, he worked in the property room where he received and logged evidence. In addition, Wilburn worked at the police academy where he assisted with training exercises and

worked on concealed weapons permits.

Wilburn had three surgeries in order to implant a device in his body that would send electrical pulses to his spinal column to relieve pain in his wrist and hand. During his first two surgeries, both in July 2012, the battery for the device was placed in Wilburn's buttocks. After both surgeries, the battery moved out of place shortly thereafter. On December 2012, Wilburn had a third surgery in order to place the battery in his chest; this surgery was a success and the battery has remained in place ever since.

To determine whether he could return to his previous position as a police officer, Wilburn underwent a series of tests. In January 2013, Wilburn underwent a functional capacity examination, which concluded that he met the strength grade for a police officer. Wilburn also passed his firearms and baton certification tests soon after. In February 2013, Dr. Murray Joiner released Wilburn for duty with certain permanent restrictions after determining that Wilburn's injuries had reached maximum medical improvement. According to Wilburn's testimony, Dr. Joiner had specific concerns about Wilburn returning to work as a patrol officer.

Wilburn asked the City to accommodate his disability by laterally transferring him to another vacant law enforcement position. Specifically, Wilburn requested transfer to two vacant positions: detective and evidence technician. Both positions are "sworn officer" positions in which the employee can be called into duty at any time and carries a firearm. According to Wilburn, either position could have accommodated his disability. Police Chief Christopher Perkins decided, however, that Wilburn's permanent restrictions, as outlined by Dr. Joiner, would have prevented Wilburn from performing as a sworn officer in any capacity. On March 4, 2013, the City terminated Wilburn's employment instead of offering him a lateral transfer within the police department or a lower-paid position outside of the police department.

2

After exhausting his administrative remedies, Wilburn filed this action on May 16, 2014, alleging that the City failed to provide a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. On August 4, 2015, the court denied the City's motion for summary judgment. See Docket No. 56. On August 19, 2015, a bifurcated jury trial began on Wilburn's reasonable accommodation claim under the ADA. That same day, at the close of Wilburn's evidence, the City made an oral motion for judgment as a matter of law, arguing that Wilburn had not presented sufficient evidence to show that the City failed to provide him with a reasonable accommodation after his permanent injury. The court granted defendant's motion.

## Standard of Review

Rule 50(a) of the Federal Rules of Civil Procedure provides that if a party has been fully heard on an issue during a jury trial and the court finds that a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," then the court may resolve the issue against the party and grant a motion for judgment as a matter of law. Fed. R. Civ. P. 50(a). In ruling on the motion, the court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party, Lack v. Wal-Mart Stores, Inc., 240 F.3d 255, 259 (4th Cir. 2001), and may not substitute its judgment for that of the jury or make credibility determinations, Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir. 1996). A court may grant judgment as a matter of law if the "evidence presented supports only one reasonable conclusion as to the verdict." Bank of Montreal v. Signet Bank, 193 F.3d 818, 831 (4th Cir. 1999).

## Discussion

The ADA prohibits employers from "discriminat[ing] against a qualified individual on

3

Case 7:14-cv-00255-GEC   Document 79   Filed 08/27/15   Page 3 of 11   Pageid#: 895

the basis of disability...." 42 U.S.C. § 12112(a). Disability discrimination may include the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an [] employee...." Id. § 12112(b)(5)(A). Thus, to prevail in a failure-to-accommodate case, a plaintiff must show

> (1) that he was an individual who has a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position...; and (4) that the [employer] refused to make such accommodations.

Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (quoting Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

Once an employee requests a reasonable accommodation, the interactive process is triggered. Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 322-23 (4th Cir. 2011). Both the employer and the employee have a duty to engage in good faith in the interactive process. Id. The purpose of the interactive process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

"Reasonable accommodation" may include "reassignment to a vacant position." See 42 U.S.C. § 12111(9). The U.S. Equal Employment Opportunity Commission's regulations interpreting the ADA provide that reassignment should be first to an "equivalent position in terms of pay, status, etc., if the individual is qualified and if the position is vacant within a reasonable amount of time." 29 C.F.R. Pt. 1630, App. at 1630.2(o). An employer may reassign an employee to a lower graded position if there are "no accommodations that would enable the employee to remain in the current position, and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation." Id.

In this case, the City does not dispute that Wilburn has a disability, that it had notice of

4

the disability, and that Wilburn requested a reasonable accommodation. The City asserts, however, that there was no reasonable accommodation available to Wilburn because he could not perform the essential functions of the detective and evidence technician positions within the police department, and there were no vacant positions outside the police department for which Wilburn was qualified.

## I.  *Positions Within the Police Department*

Regarding the vacant positions within the police department, specifically the detective and evidence technician positions,[1] the evidence is undisputed that Wilburn could not perform the essential functions of those jobs and therefore was not qualified for either position. Under the ADA, a "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds…" Id. § 12111(8). "Essential functions" mean the "fundamental job duties of the employment position that individual with a disability holds or desires." 29 C.F.R. § 1630(n). The plaintiff bears the burden of identifying an accommodation that would allow a qualified individual to perform the job. Lamb v. Qualex, Inc., 33 F. App'x 49, 59 (4th Cir. 2002). In other words, it is the plaintiff's burden to show that with this accommodation, he is a qualified individual who could perform the essential functions of the position. Wilson, 717 F.3d at 345. The ADA does not require employers to transfer essential functions of a position to another employee in order to accommodate a disabled employee. See 29 C.F.R. Pt. 1630, App. at 1630.2(o) ("An employer … is not required to reallocate essential functions."); see also Martinson v. Kinney Shoe Corp., 104

---

[1] Plaintiff's counsel asked the court to also consider the teleservices position for the purposes of this opinion. However, there was no evidence offered at trial about a vacant teleservices position within the police department. In fact, Wilburn, on multiple occasions, admitted that he inquired about only the detective and evidence technician positions. Chief Perkins also testified that he had no other available positions within the police department at the time Wilburn asked for a reasonable accommodation. It is undisputed that the detective and evidence technician positions were the only vacant positions within the police department at the time Wilburn requested a reasonable accommodation. Therefore, the court will not consider the teleservices position in its discussion of whether there were available positions within the police department for which Wilburn was qualified.

F.3d 683, 687 (4th Cir.1997) ("The ADA simply does not require an employer to hire an additional person to perform an essential function of a disabled employee's position."). However, an employer may reallocate nonessential, marginal job functions to another employee as a reasonable accommodation for a disabled employee. 29 C.F.R. 1630, App. at 1630.2(o).

The first inquiry is whether certain job duties are essential functions of the position. See 29 C.F.R. 1630, App. at 1630.2(o) ("The determination of which functions are essential may be critical for the determination of whether or not the individual with a disability is qualified."). Wilburn offered no evidence as to why the sworn officer duties that both the detective position and the evidence technician position required are not "essential functions" of either job. During cross examination, Wilburn admitted that the detective position requires that officers carry a firearm and be able to make arrests and question suspects. In addition, Wilburn admitted during cross examination that an officer in the evidence technician position can be called to duty at all times. At trial, Wilburn offered no evidence to show that these sworn officer duties were marginal for the detective and evidence technician positions, and therefore could be reallocated to other employees in the police department. Therefore, the evidence is undisputed that the sworn officer duties were essential functions of the detective and evidence technician positions.

Having determined that Wilburn did not offer evidence to show that the sworn officer duties were marginal functions, the next inquiry is whether Wilburn could perform the essential functions of either the detective or evidence technician positions. Wilburn conceded that he was unable to perform the essential functions of a patrol officer because of his permanent restrictions, as determined by Dr. Joiner. Plaintiff presented no evidence to dispute Dr. Joiner's assessment, nor did he offer testimony or evidence indicating that he could engage criminal suspects despite Dr. Joiner's opinion and recommendation. In short, Wilburn offered no testimony or other

6

evidence as to why he was qualified to perform the essential functions of either position given his permanent restrictions that prevented him from returning to the police department as a patrol officer. See Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995) ("This circuit has made it clear…that the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is presently unable to meet the demands of his present position."). In addition, Wilburn did not identify any possible reasonable accommodations that would enable him to perform the essential functions of either the detective position or the evidence technician position.

Moreover, Wilburn offered no evidence as to why he was qualified for the position of evidence technician given his lack of training and the prerequisites for the position. The evidence technician position was a temporary vacancy because the incumbent officer was on duty in Afghanistan and was expected to return to the position. Also, Wilburn acknowledged that the evidence technician position required training, which he did not currently have, and that such training would not have been available at the time he requested a lateral transfer to the position.

In addition, when called as a witness by plaintiff, Chief Perkins testified that he had no openings in the police department for which Wilburn was qualified at the time plaintiff sought a reasonable accommodation. He denied that Wilburn was terminated simply because he had permanent restrictions, but instead testified that Wilburn's permanent restrictions prevented him from performing the essential duties of a police officer.[2] Chief Perkins testified that if he had had

---

[2] Wilburn testified that Chief Perkins told him that he either come back without permanent restrictions or not come back at all. Wilburn contends that this statement is a per se violation of the ADA as a 100% healed policy. Even assuming that Chief Perkins' single remark could constitute a "100% healed policy," courts in the Fourth Circuit have not addressed the question as to whether a 100% healed policy is a per se violation of the ADA. Nevertheless, Wilburn still did not meet his burden of showing that he was qualified for either position within the police department. See McGregor v. AMTRAK, 187 F.3d 1113, 1116 (9th Cir. 1999) ("'100% healed' policies are per se violations of the ADA. A '100% healed' or 'fully healed' policy discriminates against *qualified* individuals with disabilities because such a policy permits employers to substitute a determination of whether a *qualified* individual is '100% healed' from their injury for the required individual assessment whether the qualified individual is able to

7

a civilian position available in the department then he would have considered Wilburn for one of those positions. Therefore, the evidence remains undisputed that Wilburn could not perform the essential functions of these two jobs, with or without a reasonable accommodation, and therefore was not qualified for any available position within the police department.

In his argument in opposition to defendant's motion for judgment at a matter of law, Wilburn seemed to suggest that he would have considered being placed in other vacant positions within the police department that did not require sworn officer duties, including the positions he was in immediately after his injury. However, once again, the court notes that Wilburn only asked Chief Perkins to consider him for the two sworn officer positions of evidence technician and detective. At trial, he also testified as to his desire to return to the police department as a police officer. In addition, Chief Perkins testified that he had no openings in the police department for which Wilburn was qualified, including both police officer positions and civilian positions. Wilburn did not offer any testimony or evidence to contradict Chief Perkin's assertion about the lack of available positions within the police department. Moreover, Wilburn has the ultimate burden to show that there were vacant, permanent positions at the time he requested a reasonable accommodation for which he was qualified.[3] Kemp v. Volvo Grp. N. Am., Inc., No. 7:11CV00535, 2013 WL 275885, at *4 (W.D. Va. Jan. 24, 2013) aff'd, 540 F. App'x 239 (4th Cir. 2013). Wilburn has not met this burden. Accordingly, Wilburn has not shown that the City failed to offer him a reasonable accommodation within the police department. The court

---

perform the essential functions of his or her job either with or without reasonable accommodation." (emphasis added)).

[3] Chief Perkins testified that the City has a policy that police officers cannot be placed in "light duty" positions for over 120 days. Further, at trial, Chief Perkins explained that light duty positions are not permanent and not full-time. A few days after his injury, Wilburn was placed in a light duty capacity and remained in that capacity for several months, which was past the 120-day period.

8

concludes that a reasonable jury would not have a sufficient evidentiary basis to find for Wilburn on this issue.

## *II.  Positions Outside the Police Department*

Regarding positions outside of the police department, there was no evidence indicating that there were vacant positions in other city departments for which Wilburn was qualified. As noted above, the plaintiff bears the burden of identifying the existence of a vacant position for which he is qualified. Kemp, 2013 WL 275885, at *4; see Schneider v. Giant of Maryland, LLC, 389 F. App'x 263, 272 (4th Cir. 2010) (affirming the district court's grant of summary judgment in favor of the employer because, although there may have been other accommodations for the employee, he "neither requested such alternatives, nor requested to discuss any other potential accommodations with his supervisors."). If there is no vacant position for which the plaintiff is qualified, then failure to reassign the employee does not constitute a breach of the employer's duty to reasonably accommodate the employee's disability. Fields v. Clifton T. Perkins Hospital, 605 F. App'x 200, 201 (4th Cir. 2015).

In this case, Wilburn did not offer any evidence as to the existence of a vacant position for which he was qualified.[4] The court notes that Wilburn testified at great length about several other departments in which he could have worked (e.g., animal control, parks and recreation, zoning). However, at no point during the trial did Wilburn specifically identify any vacant position in other city departments for which he was qualified, but instead merely testified about his abilities generally. When asked on cross examination if he knew of any vacancies in other departments in the city, Wilburn responded that he was not aware of any vacancies at the time he sought a reasonable accommodation.

---

[4] For that matter, Wilburn testified that he did not ask the employer to consider jobs outside the police department. He only asked Perkins to consider the evidence technician and detective positions.

9

Wilburn argues that the reason that he could not identify any vacant positions outside of the police department for which he was qualified was because the City did not participate in the interactive process in good faith to determine a reasonable accommodation under the circumstances. Specifically, Wilburn contends that Chief Perkins simply terminated him once Dr. Joiner decided that Wilburn had permanent restrictions that prevented him from returning as a patrol officer. However, "an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." Crabill, 423 F. App'x at 323. Instead, the employee must "demonstrate that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee." Id. There is no dispute in this case that Wilburn requested a reasonable accommodation, triggering the duty to engage in the interactive process for both Wilburn and the City. Wilburn's evidence also suggests that the City failed to engage in the interactive process in good faith. However, Wilburn did not offer any evidence at trial that there were indeed vacant positions within the City for which he was qualified, and that would have been identified if the City had engaged in the interactive process in good faith. Even if the court agrees with Wilburn's allegations that the City did not engage in the interactive process in good faith, plaintiff cannot prevail on that claim alone without also identifying a reasonable accommodation that would have been identified but for the City's failure. Wilburn failed to do this. Therefore, in the absence of any evidence that there were vacant positions within the city for which Wilburn was qualified, Wilburn cannot satisfy the burden of proof in demonstrating that the City failed to offer him a reasonable accommodation outside of the police department. The court finds that a reasonable jury would not have a sufficient evidentiary basis to find for Wilburn on this issue.

10

Case 7:14-cv-00255-GEC Document 79 Filed 08/27/15 Page 10 of 11 Pageid#: 902

## Conclusion

For the reasons stated, the City of Roanoke's motion for judgment as a matter of law is granted. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 27th day of August, 2015.

                                                    Chief United States District Judge